James H. Power
Marie E. Larsen
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Telefax: 212-385-9010
Email: james.power@hklaw.com
       marie.larsen@hklaw.com

*Attorneys for Plaintiff*
*Nippon Kaisha Line Limited*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIPPON KAISHA LINE LIMITED, individually and on behalf of M/V RIGEL LEADER (IMO No. 9604940)<br><br>                              Plaintiff,<br><br>- against -<br><br>O.W. BUNKER USA INC., NUSTAR ENERGY SERVICES, INC., KIRBY INLAND MARINE LP, ING BANK N.V.<br><br>                              Defendants. | Case No. 14 Civ. 10091 (VEC) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DISCHARGE FROM LIABILITY, AWARD OF ATTORNEYS' FEES AND DISMISSAL FROM THE ACTION WITH PREJUDICE**

# TABLE OF CONTENTS

          **Page**

FACTUAL BACKGROUND ..................................................................................................... 1

PROCEDURAL HISTORY ....................................................................................................... 2

ARGUMENT ............................................................................................................................... 4

I.     NYK LINE AND NYKTC ARE ENTITLED TO DISCHARGE BECAUSE THE REQUIREMENTS OF INTERPLEADER HAVE BEEN MET .............................. 4

        A.     THIS COURT HAS FOUND THAT INTERPLEADER JURISDICTION IS PROPER ............... 5

        B.     NYK LINE IS A DISINTERESTED STAKEHOLDER WHO HAS CONCEDED LIABILITY FOR PAYMENT OF THE O.W. BUNKER INVOICE AMOUNT AND HAS DEPOSITED FUNDS INTO THE COURT REGISTRY PURSUANT TO THE DEPOSIT ORDER ................. 6

II.    NYK LINE IS ENTITLED TO ITS ATTORNEYS' FEES AND COSTS FOR THE THEING AND CONDUCT OF THIS ACTION ........................................................ 8

CONCLUSION ........................................................................................................................... 11

## **TABLE OF AUTHORITIES**

                                                                                                          **Page(s)**

**Cases**

*A/S Krediit Bank v. Chase Manhattan Bank,*
    303 F.2d 648 (2d Cir. 1962)..................................................................................................11

*Connecticut General Life Ins. Co. v. Thomas,*
    910 F.Supp. 297 (S.D. Tex. 1995)........................................................................................10

*Guardian Life Ins. Co. v. Gilmore,*
    45 F. Supp. 3d 310, 317-18 (S.D.N.Y. 2014) .........................................................................4

*Hapag-Lloyd Aktiengesellschaft v. U.S Oil Trading LLC,*
    814 F.3d 146 (2d Cir. 2016)................................................................................................6, 7

*Klebanoff v. Mutual Life Insurance Co. of New York,*
    246 F.Supp. 935 (D. Conn. 1965) ..........................................................................................9

*Mendez v. Teachers Ins. and Annuity Ass'n and College Ret. Equities Fund,*
    982 F.2d 783 (2d Cir. 1992)....................................................................................................5

*Merrill Lynch Pierce Fenner & Smith Inc. v. Clemente,*
    2001 U.S. Dist. LEXIS 25 (S.D.N.Y. Jan. 2, 2001)................................................................8

*Metro. Life Ins. Co. v. Yitao Sun,*
    2013 U.S. Dist. LEXIS 125729 (N.D. Ill. Sept. 4, 2013) .......................................................8

*Metropolitan Life Ins. Co. v. Mitchell,*
    966 F. Supp. 2d 97 (E.D.N.Y. 2013) .....................................................................................9

*Murphy v. Travelers Ins. Co.,*
    534 F.2d 1155 (5th Cir. 1976) ................................................................................................9

*New York Life Ins. Co. v. Connecticut Development Authority,*
    700 F.2d 91 (2d Cir. 1983)......................................................................................................5

*Prudential Ins. Co. of Am. v. Hovis,*
    553 F.3d 258 (3d Cir. 2009)....................................................................................................8

*Rhoades v. Casey,*
    196 F.3d 592 (5th Cir. 1999) ..................................................................................................9

*Schirmer Stevedoring Co. ltd. v. Seaboard Stevedoring Corp.,*
    306 F.3d 188 (9th Cir. 1962) ................................................................................................11

*U.S. Trust Co. v. Alpert*,
   10 F. Supp. 2d 290 (S.D.N.Y. 1998)................................................................................8

*Wells Fargo Bank, N.V. v. ESM Fund I, LP*,
   785 F. Supp. 2d 188 (S.D.N.Y. 2011)..............................................................................8

**Statutes**

28 U.S.C. § 1335................................................................................................................2, 5, 6, 7

28 U.S.C. § 2361..........................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 54.........................................................................................................................8

Plaintiff Nippon Kaisha Line Limited a/k/a Nippon Yusen Kabushiki Kaisha a/k/a Nippon Yusen Kaisha[1] ("NYK Line" or "Plaintiff"), by and through its undersigned counsel, in accordance with this Court's order dated April 6, 2016 (Dkt. 123) files this motion and memorandum of law in support thereof to discharge NYK Line and related non-party NYK Trading Corporation ("NYKTC") from liability with respect to the fuel delivery to the vessel M/V Rigel Leader (the "Vessel") which is the subject of this interpleader action, and further to discharge the Vessel from further *in rem* liability with respect to the fuel delivery. Plaintiff further requests that it be awarded attorneys' fees in connection with the filing and conduct of the interpleader action, and that it be dismissed from the action with prejudice, and states as follows:

## FACTUAL BACKGROUND

On or about October 9, 2014, NYKTC on behalf of NYK Line ordered bunkers to be loaded onboard the Vessel from O.W. Bunker USA Inc. ("O.W. USA"). The bunkers were to be supplied to the Vessel within the Port of Houston, Texas. The bunkers were delivered to the Vessel by third-party NuStar Energy Services Inc. ("NuStar"). An invoice was issued to NYKTC on October 16, 2014 by O.W. USA for the supply of bunkers to the Vessel, directing payment of $541,282.53 to O.W. USA.

Before payment to O.W. USA came due, on November 7, 2014, O.W. Bunker & Trading A/S and certain of its Danish subsidiaries and affiliates filed for bankruptcy in their home jurisdiction of Denmark. Thereafter many other O.W. entities and/or affiliates filed for bankruptcy in various other jurisdictions around the world and all of these entities ceased doing business.[2] On

---

[1] Because the corporate name of NYK Line is in Japanese, its articles of incorporation provide several translations for NYK Line's official name in English.

[2] To date, only O.W. Bunker Germany GmbH has sought and obtained recognition pursuant to Chapter 15 of the United States Bankruptcy Code. Chapter 15 recognition is a prerequisite for any foreign entity in bankruptcy to litigate in the United States.

1

or about November 13, 2014, O.W. USA, O.W. Bunker North America Inc. or O.W. Bunker Holding North America Inc. (collectively, the "Debtors") all filed voluntary petitions pursuant to Chapter 11 in the United States Bankruptcy Court for the District of Connecticut as Case Nos. 14-51720, 14-51721 and 14-51722.

Pursuant to an Omnibus Security Agreement dated December 19, 2013 between O.W. Bunker & Trading A/S and its subsidiaries, and ING Bank N.V. ("ING") as Security Agent, many of the O.W. entities allegedly assigned certain rights in respect of their supply contracts as security to ING.

O.W. USA never made payment to the underlying physical supplier NuStar. Accordingly, NYK Line, NYKTC and the Vessel were faced with competing *in personam* and *in rem* claims for payment by NuStar and ING, as well as potential competing claims from other entities including O.W. USA and the Debtors.

**PROCEDURAL HISTORY**

NYK Line brought this interpleader action on December 23, 2014 pursuant to 28 U.S.C. § 1335 as a disinterested stakeholder with respect to funds owed for the sale and delivery of fuel to the Vessel. (Dkt. 1). NYK Line, its affiliate NYKTC and the Vessel were and are unable to determine the proper recipient of the funds, as between competing *in rem* and *in personam* claimants including O.W. USA, NYKTC's contractual counterparty, NuStar, the physical supplier of fuel to the Vessel, or ING Bank N.V. ("ING") as purported assignee of receivables from various O.W Bunker entities.

Also on December 23, 2014, NYK Line, individually and on behalf of the Vessel, filed two *Ex Parte* Applications for the entry of orders directing the deposit of interpleader funds into the Court's registry and restraining the arrest of the Vessel which is the subject of the interpleader

action. This Court executed the proposed Orders on December 23, 2014 (Dkts. 4, 5), and NYK Line did deposit $573,759.48 into the Court registry, constituting the amount invoiced for the fuel delivery to the Vessel plus 6%. On January 6, 2016 NYK Line deposited an additional 6% ($32,476.95) into the Court registry pursuant to the terms of the Deposit Order. (Dkt. 101).

All of the defendant-claimants have been served with a summons and the complaint in this action. On February 13, 2015 defendant Kirby Inland Marine, L.P. was voluntarily dismissed, stating that it had no *in rem* or *in personam* claims in connection with the fuel delivery to the Vessel. On February 23, 2015 NuStar filed an Answer to the Complaint and a Motion for Issuance of a Warrant of Arrest against the funds on deposit in order for NuStar to enforce its alleged maritime lien. (Dkt.22). Although the Court never ruled on this motion in this action, the Court did deny a similar request by NuStar (and O.W. USA) to arrest the funds in another case, noting that "it is unclear what NuStar and O.W. USA hope to gain by arresting the deposited funds" and finding that the arrest motion "should not affect the interpleader parties' substantive rights." (Civ. No. 14-cv-9720, Dkt. 112 at 4-5).

On December 14, 2015 O.W. USA filed an Amended Answer with Counterclaim against NYK Line and NYKTC based on a breach of contract theory, claiming contractual damages in the amount of the unpaid invoices, plus interests and costs. (Dkt. 98). As set forth in NYK Line's Answer to O.W. USA's Amended Counterclaim, this counterclaim against NYK Line actually consists of a claim against the interpleader funds, rather than an independent counterclaim for separate liability against NYK Line. (Dkt. 103).

On December 15, 2015 the United States Bankruptcy Court for the District of Connecticut confirmed O.W. USA's Chapter 11 Liquidation Plan (Case No. 14-51720 (Bankr. D. Ct.) (Dkt. 1171), pursuant to which ING has released all claims in favor of O.W. USA where O.W. USA

3

acted as a contractual counterparty. On May 12, 2016 ING filed a Notice of Disclaimer of Interest and Request for Dismissal of ING (Dkt. 132), leaving defendant-claimants O.W. USA and NuStar to litigate the merits of their claims to the funds on deposit.

This action is one of thirty-one (31) related interpleader actions filed in this Court in connection with claims against vessel owners or charterers and their vessels for the non-payment of fuel delivered shortly before the O.W. Bunker collapse in November 2014. Of the thirty-one cases, twelve (12) cases proceeded through discovery in which pursuant to order of this Court NYK Line fully participated including providing witnesses for deposition and complying with discovery requests from the Defendant claimants.

On April 6, 2016, this Court ordered that this action shall be selected as one of four "test cases" for briefing on various issues – including summary judgment motions by the defendant-claimants with respect to the merits of their claims, as well as plaintiffs' motions for discharge from the interpleader actions. (Dkt. 123).

## ARGUMENT

### I. NYK LINE AND NYKTC ARE ENTITLED TO DISCHARGE BECAUSE THE REQUIREMENTS OF INTERPLEADER HAVE BEEN MET

Interpleader actions typically proceed in two stages: in the first stage a court determines the right of the party invoking interpleader to compel the claimants to litigate their claims to the stake in one proceeding – i.e., whether the statutory requirements of interpleader have been met. Typically, during this stage an interpleader plaintiff will also seek to be discharged from an action, and to have the court enter a permanent injunction against claims being brought against it, and then the court will proceed to the second step. *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 317-18 (S.D.N.Y. 2014) (citing cases). In the second stage of interpleader, a court will determine the respective rights of the claimants to the interpleader fund. *Id.*

4

The interpleader statute authorizes a district court to discharge a stakeholder in any civil interpleader action from further liability to claimants. "Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment." 28 U.S.C. § 2361; *see also Mendez v. Teachers Ins. and Annuity Ass'n and College Ret. Equities Fund*, 982 F.2d 783, 787 (2d Cir. 1992). Once an interpleader plaintiff has satisfied the § 1335 jurisdictional requirements of an interpleader claim, "[t]he court should readily grant discharge of the stakeholder, unless it finds that the stakeholder may be independently liable to a claimant or has failed to satisfy the various requirements of interpleader, including, when required, deposit of the stake." *New York Life Ins. Co. v. Connecticut Development Authority*, 700 F.2d 91, 95 (2d Cir. 1983).

NYK Line respectfully submits that the requirements of interpleader having been found, and the case having proceeded into the second stage, including the discovery having taken place from June 2015 through February 2016, that it should now be dismissed with prejudice from the action and that it and NYKTC should be fully discharged from all liability to the claimants in connection with the subject fuel delivery. In addition, because of the *in rem* nature of many of the defendants' claims, the Vessel should also be discharged from *in rem* claims which are the subject of the interpleader.

### A. This Court Has Found that Interpleader Jurisdiction Is Proper

The Court's interpleader jurisdiction in this case derives from the Federal Interpleader Act, in particular 28 U.S.C. §1335. Section 1335 provides, in relevant part, that:

> (a)   The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person…having in his or its custody or possession money or property of the value of $500 or more… or being under any obligation written or unwritten to the amount of $500 or more if (1) Two or more adverse claimants, of diverse citizenship…are claiming or may claim to be entitled to such money or property…, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid…the

5

amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable … conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

28 U.S.C. §1335.

In its initial pleadings, NYK Line alleged that it and NYKTC faced 1) adverse claims of greater than $500; 2) by two or more defendant-claimants of diverse citizenship (otherwise known as "minimal diversity" – satisfied by the foreign and domestic claimants here, including NuStar and ING); and 3) that it was prepared to deposit the disputed funds into the Court registry. (Dkt. 1 at ¶ 9).

In its Memorandum Opinion and Order dated July 1, 2015, this Court found that it had subject matter jurisdiction over the competing *in personam* and *in rem* claims against Plaintiff and the Vessel under the interpleader statute. Dkt 69. at 19 ("Because the *in personam* claims against the Vessel Interests and the *in rem* claims against the Vessels arise out of the same debt, they are 'inextricably interrelated,' and therefore subject to interpleader"). The Court's analysis has since been reaffirmed in the Second Circuit decision, *Hapag-Lloyd Aktiengesellschaft v. U.S Oil Trading LLC*, 814 F.3d 146 (2d Cir. 2016).

> **B. NYK Line is a Disinterested Stakeholder who has Conceded Liability for Payment of the O.W. Bunker Invoice Amount and has Deposited Funds into the Court Registry Pursuant to the Deposit Order**

Section 1335(a) creates a requirement that the plaintiff deposit the disputed amount (or post a bond). *See supra.* As set forth above, on December 23, 2015 Judge Broderick (sitting as Part I Judge) entered a Deposit Order allowing NYK Line to make a deposit of $573,759.48 into the registry to secure the claims of all defendants in this action. (Dkt. 5). On January 6, 2016

6

NYK Line deposited an additional 6% ($32,476.95) into the Court registry pursuant to the terms of the Deposit Order. (Dkt. 101). NYK Line has admitted liability on payment of the O.W. USA invoice in the amount of $541,282.53, and has disclaimed any interest in the funds on deposit up to that amount. (Dkt. 1 at ¶ 28).

In its Memorandum Opinion and Order, the Court confirmed that the deposit of a single amount of security into the registry to secure the competing *in rem* and *in personam* claims was sufficient under the Interpleader Act:

> Although the Fuel Suppliers argue that their *in rem* claims against the Vessels must be "secure" in order for the Court to have subject matter jurisdiction under 28 U.S.C. § 1335, there is no such [sic] requirement under this statute. Section 1335 only requires that the interpleading party pay "the amount due under such obligation into the registry of the court, there to abide the judgment of the court" or give "a bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper." 28 U.S.C. § 1335(a)(2). The Vessel Interests either deposited funds or posted bonds measured by the amount of their "obligations" under the fuel supply contracts. That is sufficient to satisfy the requirements of Section 1335.

Dkt. 69 at 20, n. 8; *see also Hapag-Lloyd*, 814 F.3d at 153, n. 19. As the very nature of interpleader is to eliminate the risk of double liability by the interpleader plaintiff by bringing competing claims into a single forum for adjudication, the deposit of the funds into the registry is sufficient to secure all of the defendants' claims for payment of the invoice amount for the fuel delivered to the Vessel. *See Hapag-Lloyd*, 814 F.3d at 153 (acknowledging that the District Court may have to "untangle complicated questions of subrogation and set-offs among the parties as it determines payment obligations"). The amount on deposit being sufficient for these purposes and under the requirements of 28 U.S.C. § 1335, there is no need for NYK Line to continue as a party to the action.

Nor does the filing of a counterclaim by O.W. USA in its Amended Answer (or the request for arrest of the funds by NuStar, addressed above) require maintaining NYK Line in this action.

7

When a plaintiff is entitled to pursue interpleader relief, courts have consistently rejected counterclaims that are essentially based on the plaintiff having opted to proceed via an interpleader complaint rather than having chosen from among competing adverse claimants. *See, e.g., U.S. Trust Co. v. Alpert*, 10 F. Supp. 2d 290, 293-294 (S.D.N.Y. 1998); *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258 (3d Cir. 2009) ("the bringing of an interpleader action protects [plaintiff] from liability to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy"); *Metro. Life Ins. Co. v. Yitao Sun*, 2013 U.S. Dist. LEXIS 125729, 15-16 (N.D. Ill. Sept. 4, 2013) ("When an interpleader is properly asserted, counterclaims seeking payment of the interpleaded funds are disallowed."). Because O.W. USA's counterclaim arises from the same controversy which caused NYK Line to deposit the funds into the Court registry, the counterclaim fails as a matter of law and discharge is still appropriate. *Merrill Lynch Pierce Fenner & Smith Inc. v. Clemente*, 2001 U.S. Dist. LEXIS 25, *20-21 (S.D.N.Y. Jan. 2, 2001).

## II. NYK LINE IS ENTITLED TO ITS ATTORNEYS' FEES AND COSTS FOR THE FILING AND CONDUCT OF THIS ACTION

Upon discharge and dismissal from this action, NYK Line respectfully requests that this Court grant it costs and attorneys' fees for filing and participating in this interpleader action, which brought all competing claims before this Court into a single forum, increasing judicial efficiency and avoiding the need for the parties to each individually pursue NYK Line and chase the Vessel to attach or arrest them to secure their maritime claims.[3]

---

[3] NYK Line is cognizant of the fact that typically a motion for attorneys' fees is made post-judgment in accordance with Fed. R. Civ. P. 54(d)(2)(B)(i). However, given the course of these proceedings, NYK Line respectfully submits that the substantive right to attorneys' fees should be adjudicated at this juncture. *See Wells Fargo Bank, N.V. v. ESM Fund I, LP*, 785 F. Supp. 2d 188, 198 (S.D.N.Y. 2011) (considering motion for discharge and attorneys' fees at once, but reserving quantum to be determined in accordance with Rule 54). Accordingly, NYK Line submits it would not be appropriate (nor practical) at this juncture to adjudicate the quantum of an attorneys' fees award as such should be done post-discharge in accordance with the cited Rule.

8

The Court has broad equitable discretion in determining whether to award counsel fees and costs to the interpleader, and if so, from what source they should be paid. *Klebanoff v. Mutual Life Insurance Co. of New York*, 246 F.Supp. 935 (D. Conn. 1965) (citing Moore's Federal Practice). A Court will generally award fees to a disinterested stakeholder required to participate in a dispute not of his own making. *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1164 (5th Cir. 1976). A reasonable award of fees and costs to a plaintiff in an interpleader case is appropriate where the Court finds that the plaintiff is "(1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." *Metropolitan Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 104 (E.D.N.Y. 2013). As set out above, NYK Line has satisfied all of the factors entitling it to attorney's fees as it is a disinterested stakeholder who has conceded liability, and has deposited the interpleader funds into the Court registry. Additionally, as can be seen from the many cases pending before this and other courts, this dispute was not of NYK Line's own making – indeed the inability of the claimants to agree as to which of them has a valid maritime lien (or other claim), or to otherwise settle their disputes would have allowed NYK Line to immediately make payment to a single claimant.

Where a case involves complex or unique issues, a court is even more likely to award attorneys' fees. 966 F. Supp. 2d at 104. In *Rhoades v. Casey*, 196 F.3d 592 (5th Cir. 1999), the court awarded fees for tasks such as drafting the original interpleader complaint, locating all of the participants, answering motions to dismiss the interpleader action, and participating in settlement discussions. The court noted that although it considered the sum requested to be high for a typical interpleader action, "[Plaintiff] did attempt to be discharged from the proceeding in February 1997. However, the district court declined to discharge [Plaintiff] until a final distribution of the [interpleader fund] was made." 196 F.3d at 603.

9

Despite requesting to be discharged on numerous occasions, as can be seen from the docket of this case (currently consisting of 132 docket entries), the level of participation required of NYK Line as an interpleader plaintiff in the O.W. Bunker dispute has been unusually high. Similarly, in *Connecticut General Life Ins. Co. v. Thomas*, 910 F.Supp. 297 (S.D. Tex. 1995), the interpleader plaintiff asserted that it "had to referee and participate at a level quite unusual in an interpleader action, and as a result incurred unnecessary attorneys' fees and costs." *Id.* at 305. The Court agreed, noting "[t]he tone of the filings in this case make clear that the relationship between the parties has been extremely contentious... the parties began filing warring motions..." and that "the hostility between [claimants] and their litigation strategies has needlessly complicated this action and caused [Plaintiff] to incur unnecessary attorneys' fees and costs." *Id.*

From early on in the interpleader cases before this Court, despite being clearly eligible for and consistently requesting leave to file for discharge, NYK Line and the other vessel interests plaintiffs have faced all manner of frivolous and repetitive challenges from the interpleader defendants. The contentious issues have included the subject matter jurisdiction of this Court, arguing in favor of double liability for plaintiffs, raising issues with respect to venue of the O.W. Debtors' bankruptcy, the scope of the restraining order, and arbitration and personal jurisdiction issues. *See, e.g.* Dkts. 34, 59, 60, 116. Similarly, NYK Line has been compelled to participate in discovery which has included the production of documents and presentation of deposition testimony. Despite NYK Line's prompt effort to post full security for the fuel delivery claims into the court registry for the benefit of all claimants following the collapse of O.W. Bunker, these claimants continued to attempt to question the integrity of the interpleader process through these numerous motions in order to be free to seek their own independent security and recovery regardless of whether such acts would serve to impose double (or triple) liability on NYK Line

through conflicting judgments in various jurisdictions. *See A/S Krediit Bank v. Chase Manhattan Bank*, 303 F.2d 648 (2d Cir. 1962) (party which properly invoked interpleader was entitled to costs and attorneys' fees, whose amount was due in "no small measure" to claimant's "unjustified resistance to interpleader").

These tactics and procedural history entitle NYK Line to recover attorneys' fees for its substantial participation in the litigation, to be paid from the principal deposit in the registry. That said, NYK Line acknowledges that the source of funding of its award of attorneys' fees is within the discretion of the Court. *See Schirmer Stevedoring Co. ltd. v. Seaboard Stevedoring Corp.*, 306 F.3d 188, 194-95 (9th Cir. 1962) (noting court discretion to award fees to be paid by the winning claimant, the losing claimant or divided between them).

## CONCLUSION

WHEREFORE, Plaintiff Nippon Kaisha Line Limited respectfully requests that it, contractual counterparty NYK Trading Corporation and the vessel M/V Rigel Leader be discharged from any and all *in personam* and *in rem* liability with respect to subject matter of this interpleader action, that it be dismissed with prejudice from the action, and that it be awarded attorneys' fees and costs in connection with the action. Further, NYK Line requests that all funds deposited by Plaintiff into the Court registry over and above the O.W. USA invoice amount of $541,282.53, including specifically the 6% interest component be ordered returned to NYK Line.

Dated: May 13, 2016
      New York, New York

                                      HOLLAND & KNIGHT LLP

                                      By: */s/ James H. Power*
                                      James H. Power
                                      Marie E. Larsen
                                      31 West 52nd Street
                                      New York, New York 10019

Telephone: 212-513-3200
Telefax: 212-385-9010
Email: james.power@hklaw.com
marie.larsen@hklaw.com

*Attorneys for Plaintiff Nippon Kaisha Line Limited*

12

## CERTIFICATE OF SERVICE

    The undersigned counsel hereby certifies that, on May 13, 2016, a true and correct copy of the captioned document was served upon all counsel of record via ECF.

*/s/ James H. Power*
James H. Power
