Blank Rome LLP
405 Lexington Avenue
New York, New York
Thomas H. Belknap, Jr.
(212) 885-5270
tbelknap@blankrome.com
*Counsel for NuStar Energy Services, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIPPON KAISHA LINE LIMITED, Individually and on behalf of M/V RIGEL LEADER  (IMO No. 9604940)<br><br>Plaintiff,<br><br>O.W. BUNKER USA INC., NUSTAR ENERGY SERVICES, INC., KIRBY INLAND MARINE LP, ING BANK N.V.<br><br>Defendants. | 14 CV 10091 (VEC) |

**NUSTAR'S MEMORANDUM OF LAW IN RESPONSE
TO O.W. BUNKER USA INC.'S MOTION TO CHARGE OR TAX
NIPPON KAISHA LINE LIMITED'S FEES AND EXPENSES AGAINST NUSTAR**

**Blank Rome LLP**
Thomas H. Belknap, Jr.
The Chrysler Building
400 Lexington Avenue
New York, NY 10174-0208
*tbelknap@blankrome.com*

Keith B. Letourneau
717 Texas Avenue, Suite 1400
Houston, TX 77002
*kletourneau@blankrome.com*

*Attorneys for NuStar Energy Services, Inc.*

141535.06502/105643500v.2

## PRELIMINARY STATEMENT

Subject to its pending appeal in this matter,[1] Defendant-Claimant NuStar Energy Services, Inc. ("NuStar") files this Memorandum of Law in Response to the Motion of O.W. Bunker USA Inc. ("OW USA") to Charge or Tax Nippon Kaisha Line Limited's Fees and Expenses Against NuStar (Dkt. 196), and submits that OW USA's Motion should be denied for the following reasons.

## ARGUMENT

As previously set forth in its response to Nippon Kaisha Line Limited's Motion for Discharge,[2] NuStar acknowledges that "[a]ttorneys' fees are commonly awarded to an innocent stakeholder who successfully initiates a suit as an interpleader ...." *Landmark Chems. SA v. Merrill Lynch &Co.,* 234 F.R.D. 62, 63 (S.D.N.Y. 2005) (citations omitted). To award attorneys' fees and costs, the Court "must find (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." *Id.* (citation omitted).   Further, such expenses "must be reasonable and it is at the discretion of the Court to determine what award is appropriate." *Estate of Ellington v. EMI Music Publ'g*, 282 F. Supp. 2d 192, 194 (S.D.N.Y. 2003), citing 7 Wright, Miller & Kane, § 1719.  Finally, an award of fees should be "relatively modest." *Id.; see also Chem. Bank v. Richmul Assocs.,* 666 F. Supp. 616, 619 (S.D.N.Y. 1987) (stating that fees for bringing interpleader action are "usually nominal"); *John Hancock Mut. Life Ins. Co. v. Doran,* 138 F. Supp. 47, 50 n. 2 (S.D.N.Y. 1956) (commenting that interpleader fees "should be kept small, both out of fairness to the eventual recipient of the fund

---

[1] *See* Notice of Appeal filed May 2, 2017, Dkt. 197.
[2] *See* Dkt. 149.

141535.06502/105643500v.2

and in recognition of the minimal work necessary to institute a suit in interpleader").

Contrary to the assertion OW USA makes in its Motion, taxing an interpleader plaintiff's attorneys' fees/costs against a losing claimant is not the general rule, but is in fact the exception to the general rule.   The general rule is that the award is drawn from the interpleader fund. *See Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 683 (2nd Cir. 1989) ("A disinterested stakeholder who asserts interpleader is entitled to be awarded costs and attorney's fees. These are generally awarded against the interpleader fund, but may, in the discretion of the court, be taxed against one of the parties when their conduct justifies it."); *BNP Paribas v Wayzata Opportunities Fund II, L.P.*, 09 CIV. 5351 (DLC), 2010 WL 1875716, at *3 (S.D.N.Y. May 11, 2010) ("Attorneys' fees and costs 'are generally awarded against the interpleader fund, but may, in the discretion of the court, be taxed against one of the parties when their conduct justifies it.'"); *Croskey v. Ford Motor Co.-UAW*, 01 CIV. 1094 (MBM), 2002 WL 974827, at *10 (S.D.N.Y. May 6, 2002) ("Costs and fees are generally awarded against the interpleader fund itself, in the absence of misconduct on the part of one of the parties suggesting that they should bear such costs."); *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Sprague*, 251 Fed Appx 155, 157 (4th Cir. 2007) ("We note that fee awards are generally drawn from the interpleaded fund itself, not from the losing party…"); *Prudential Ins. Co. of Am. v Boyd*, 781 F.2d 1494, 1498 (11th Cir. 1986) ("The usual practice is to tax the costs and fees against the interpleader fund, although the court may tax the losing claimant directly when her conduct justifies doing so."); and, *Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (1st Cir. 1962) ("An interpleader fee is usually awarded out of the fund to compensate a totally disinterested stakeholder who had been, by reason of the possession of the fund, subjected to conflicting claims through no fault of its own.").

3

The general rule in interpleader matters comports with the American Rule, to wit: "Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *See Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164, 192 L. Ed. 2d 208 (2015), quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010).  The Supreme Court has held that because the American Rule is deeply rooted in the common law, the Court will not deviate from it "absent explicit statutory authority." *Id*.  There exists no statute or contract that imposes upon NuStar the obligation to pay Vessel Owners' attorneys' fees in this case.

In *Septembertide*, cited by OW USA in its Motion, the Second Circuit confirmed an order taxing an interpleader plaintiff's fees and costs against a losing claimant and described the conduct at issue as follows:

> On July 14, 1986 Septembertide instituted the present litigation against Stein & Day and New Library (but not Bookcrafters), and sought by way of a temporary restraining order to prevent New Library from making any advance payments to Stein & Day. On July 24 New Library asserted an interpleader claim as a counterclaim against Septembertide, and made a cross-claim against Stein & Day and Bookcrafters. For the next six months New Library attempted to obtain agreement among the parties to pay the paperback funds into court or in an escrow account. Only Septembertide refused to agree. Instead, it moved for summary judgment on its contract claims against all defendants and to dismiss New Library's interpleader action, taking the position that New Library was not a stakeholder entitled to such relief. New Library cross-moved for summary judgment on its interpleader claim and successfully obtained a court order granting it leave to deposit the paperback funds into court in an interest-bearing bank account.

*Septembertide*, 884 F.2d at 683.  The Second Circuit concluded that the foregoing "justified the district court in taxing these costs and fees against [Septembertide, the losing claimant], rather than against the interpleader fund." *Id*.

OW USA's assertion that NuStar alone is responsible for "prolonging and complicating Nippon Kaisha Line Limited's involvement in this case" is mistaken.  This is because, among other things, OW USA itself opposed Nippon Kaisha Line Limited's Motion for Discharge.[3]  In doing so, OW USA argued that "[c]ontrary to the assertions made in the Motion for Discharge, the actual record of this case demonstrates that neither the Plaintiff nor any of the other non-parties Plaintiff seeks to have discharged have satisfied the requirements of the interpleader statute."[4]  Likewise, ING Bank, which actively participated as a claimant in this matter until filing a notice of disclaimer on the eve of summary judgment briefing,[5] made a quasi-challenge to interpleader jurisdiction.[6] ING Bank also challenged the scope of the Court's interpleader injunction and sought permission to initiate and/or continue foreign arbitration proceedings on its claims[7], to which the Vessel Interests understandably objected,[8] and which the Court subsequently denied as procedurally improper, while also noting that it found "many of the counterarguments raised in response to ING's March 15, 2016 request to be persuasive."[9]

NuStar's conduct in this case bears no resemblance to the conduct at issue in *Septembertide* and in no way justifies "taxing" it with any award of attorneys' fees and costs.  NuStar did not file

---

[3] *See* Dkt. 157.

[4] *Id.* at page 1 (page 4 of ECF filing stamp).

[5] *See* Dkt. 132, Notice of Disclaimer, filed on May 12, 2016, the day before summary judgment motions were due. Despite doing so, the next day ING Bank filed a letter with the Court expressing its support for OW USA's motion for summary judgment and incorporating by reference ING Bank's motion for summary judgment filed in the Clearlake matter. *See* Dkt. 137.

[6] *See* ING Bank Memorandum of Law, Dkt 16; and, Vessel Plaintiffs' Joint Memorandum of Law, Dkt. 23, at p. 3 ("Defendant ING Bank has filed a brief on this issue, in which it did not oppose the efficiency of interpleader in a single forum to adjudicate maritime liens, but maintains an untenable double liability argument by stating that Plaintiffs must not be discharged from the actions, suggesting that Plaintiffs may ultimately be required to secure (and pay) additional claims.").

[7] *See* Dkt. 116.

[8] *See* Dkt. 125.

[9] *See* Dkt. 128.

this action (as Septembertide did), NuStar did not seek a restraining order preventing vessel interests from making any payments to the other claimants (as Septemberide did), and NuStar did not oppose the interpleader of the disputed funds (as Septemberide did). And, unlike OW USA, NuStar did not oppose Nippon Kaisha's Motion to Discharge.[10]  NuStar should not be penalized for participating in the bellwether cases, the process the Court created for the purpose of streamlining the adjudication of the myriad OW cases filed before the Court.   This process has benefited, and will continue to benefit, all parties, including OW USA. The Court recognized the foregoing when discussing the unfairness of taxing NuStar with attorneys' fees and costs:

> THE COURT: Your position is going to be in the Clearlake? Let me just make sure I get this. The bank's view is going to be you get all the money and Mr. Belknap's client [NuStar] has to pay the attorney's fees for all of this?
>
> Let me just say, that doesn't seem fair. I am happy to consider your arguments, but just keep in mind that the physical suppliers are out substantial money, and they've litigated hard and well and you guys have litigated hard and well, but I think we need to keep some perspective here in terms of who's getting the money.[11]

OW USA asserts NuStar's jurisdictional challenge as one basis for taxing fees, but NuStar abandoned that position relatively early in the litigation.[12]  Nor did NuStar join in USOT's appeal of the jurisdictional issues to the Second Circuit.  What is more, as acknowledged by this Court and the Second Circuit, this matter raised "novel" jurisdictional issues of first impression. *See*

---

[10] *See* Dkt. 149.  NuStar did request that "[t]o the extent anything more than "nominal" fees and costs are sought, however, NYK Line should first be required to appropriately supplement its initial disclosures and provide proper documentation – particularly, copies of invoices – supporting any such claim." Id. at p. 5.  This request remains valid, especially so in the event the Court grants OW USA's Motion and taxes NuStar with attorneys' fees and costs.

[11] *See* transcript of hearing at page 17, lines 16-15, attached to OW USA's Motion as Exhibit A (Dkt. 196-1).

[12] After initially challenging subject matter jurisdiction, NuStar advised that Court that it "does not object to the Court's exercise of *in rem* jurisdiction provided Vessel Owners stipulate to same and the treatment of the interplead funds as the substitute *res*…." *See* Exhibit A, joint letter filed with the Court on June 16, 2015, at p. 6.  Further, NuStar did not join in USOT's appeal to the Second Circuit.

*Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 148 (2d Cir. 2016) ("This action presents, as the District Court aptly put it, 'interesting and apparently novel questions regarding the interplay among the United States bankruptcy law, maritime law and the federal interpleader statutes.'"). The efforts by Nippon Kaisha Line Limited and the other interpleader plaintiffs to consolidate these many varied interests into a single interpleader action in New York was quite legitimately subject to challenge.

The novelty of the jurisdictional issues in this case further distinguishes NuStar's conduct from the party against whom costs were taxed in *Septembertide*. Indeed, if this Court were to shift fees merely because NuStar made a legitimate jurisdictional or other legal argument in this case, this will have a chilling effect on the ability of future interpleader claimants to protect their interests. The fact that the Second Circuit ultimately upheld this Court's subject matter jurisdiction in one of the consolidated cases does not render the challenge unreasonable. It is not appropriate to impose upon the claimants the costs of Nippon Kaisha Line Limited's novel litigation strategy – which, ultimately, allowed Nippon Kaisha Line Limited to avoid arrest of the subject vessel and significant other litigation costs that would not themselves have been recoverable in any event.

OW USA's assertion that NuStar engaged in unnecessary discovery on the merits of its claims while OW USA relied on a single request for production and judicial admissions made by Nippon Kaisha Line Limited is also off base. The Court may recall that at the outset of discovery in the consolidated cases, NuStar proposed submitting summary judgment motions to avoid the need for substantive discovery. *See* Exhibit A, joint letter filed with the Court on June 16, 2015, at p. 6; and, Exhibit B, transcript of hearing held on June 19, 2015, at p. 46, line 16 – p. 47, line 23. ING Bank opposed NuStar's proposal on the grounds that "factual issues need to be decided before

7

these motions can be decided…" and "the motion should come when discovery is over." *See* Exhibit A at page 4; and, Exhibit B at page 51, line 24 to page 54, line 21.  The deposition about which OW USA complains in its Motion was actually first noticed by ING Bank. *See* Exhibit C, notice of deposition, attached as Exhibit 1 to deposition of Daisuke Sano.  ING Bank's counsel was the first to examine the witness, and the deposition was conducted over two days by agreement of all involved simply to accommodate the large time difference between New York, where the examining attorneys were located, and Japan, where the witness, who was designated as the representative for both the RIGEL LEADER and the OCEAN FRIEND cases, was located.[13] *See* Exhibit D, excerpts from the deposition of Daisuke Sano.

OW USA's complaints about the costs of discovery are further ill-founded because OW USA reaped the benefits of this process.  A review of OW USA's Motion for Summary Judgment and supporting materials filed in this matter reveals that OW USA relied on the materials developed by the other parties in discovery, including deposition testimony from witnesses for both Nippon Kaisha Line Limited and NuStar.[14]  OW USA's attempt to now use the discovery generated in this case (which occurred only after NuStar's proposal to avoid substantive discovery was rejected, and which OW USA then had the benefit of using in support of its own claims) as a basis for taxing NuStar with fees and costs incurred in connection with same has no merit whatsoever.

OW USA also asserts that the Court "has already acknowledged the obvious inequity of

---

[13] *Also see* Dkt. 164, Nippon Kaisha's reply to OW USA's response in opposition to Nippon Kaisha's Motion to Discharge, at page 9, discussing the circumstances of the deposition.
[14] *See* Dkt. 139 (Memorandum of Law in Support of Motion for Summary Judgment), Dkt. 141 (Statements of Material Facts), and Dkt. 142 (Declaration of Robert O'Conner accompanied by exhibits A-W).

8

NuStar's various positions – all of which have been adjudged groundless…." This is simply not true; there is nothing in the Court's rulings (or in the Second Circuit's ruling regarding the jurisdictional issues) indicating that NuStar's positions are or were "groundless."[15]

Finally, it is similarly disingenuous for OW USA to suggest that NuStar has attempted to "circumvent operation of the Bankruptcy Code and the Liquidation Plans," as OW USA erroneously alleges in its Motion. Quite to the contrary, OW USA's settlement agreement with NuStar in the bankruptcy action, (s*ee In re OW Bunker*, Case No. 14-51720 (Bankr. D. Conn.), Dkt No. 1270-1, for a copy of the Settlement Agreement), and the Bankruptcy Court's Order Confirming The Debtors' First Modified Liquidation Plan (Dkt. 1279), explicitly preserved—with OW USA's unconditional and express agreement—NuStar's rights to assert maritime liens and continue to pursue these maritime lien claims in this and other actions. What is more, under the bankruptcy settlement agreement and liquidation plan, NuStar will credit any recovery it may receive in this or related litigation against NuStar's claims in OW USA's bankruptcy action. *See* Dkt No. 1270-1 at p. 8; and, Dkt. 1279 at pp. 38-39. Thus, contrary to OW USA's suggestion otherwise, NuStar is not acting to the detriment of OW USA's other creditors. If anything, NuStar's pursuit of its claims benefited OW USA by drawing in monies into various identifiable accounts and court registries to secure the eventual payment of the OW USA and its creditors' respective claims.

It bears repeating that OW USA and ING Bank have, by the Court's order on the motions for summary judgment (which NuStar is appealing), been awarded recovery of 100% of the value of the bunkers NuStar physically supplied to the vessels even though OW USA and ING:

---

[15] OW USA also fails to account for NuStar's pending appeal in this matter.

1) supplied no bunkers; 2) paid for no bunkers; and, 3) only ever expected to receive a small margin on the transactions.  NuStar is substantially out of pocket on the transactions, both on the costs of the bunkers themselves and the litigation costs it has incurred pursuing payment for the bunkers. The Court should deny OW USA's Motion in its entirety.

### CONCLUSION

Based on the foregoing, NuStar respectfully requests that the Court deny the Motion of O.W. Bunker USA Inc. to Charge or Tax Nippon Kaisha Line Limited's Fees and Expenses Against NuStar (Dkt. 196), and grant NuStar such other and further relief as may be just and appropriate.

Dated: June 2, 2017
            New York, New York

                                    BLANK ROME LLP

                                     /s/ Thomas H. Belknap, Jr.
                                    Thomas H. Belknap, Jr.
                                    The Chrysler Building
                                    400 Lexington Avenue
                                    New York, New York 10174-0208
                                    tbelknap@blankrome.com
                                    Counsel for Defendant
                                    NUSTAR ENERGY SERVICES, INC.